Kirkland v. Fannin County, Georgia Kirkland v. Fannin County, Georgia Good morning. May it please the court, my name is Christine Orr Brown and Janet Hill and I represent Darrell Alsobrook and Michael Kirkland in their age discrimination claims against Fannin County, Georgia. Now, this case initially involved six plaintiffs. All six of those plaintiffs worked in the road department in Fannin County, Georgia, and those six were selected for termination in an alleged reduction in force. The district court denied summary judgment as to those plaintiffs who were above the age of 60, but granted summary judgment to the defendant as to those plaintiffs who were below the age of 60. That would be Mr. Alsobrook, who was 42 at the time, I mean 52 at the time of termination, and Mr. Kirkland, who was 47 at the time of termination. Yeah, well, that puts one of them below the average and one slightly above. So, go ahead. I'm sorry, Your Honor, above and below the average age of employees at the time of termination? I thought it was the ones that were fired. Of the ones that were fired, okay. I mean, it's your case, you know the numbers better than we do. Well, all of the plaintiffs set forth a prima facie case of discrimination. And with regard to both Mr. Alsobrook and Mr. Kirkland, we pointed to a replacement or someone who took over their duties following their terminations who were substantially younger than they were. Now, the plaintiffs contend that the district court erred in three different respects. One is that the district court considered the age-related comments in the case as it related to those 60 and above, but not as it related to those below 60. And that seems to have been the determinative factor for the district court. And what was the substance of those age-related comments? There were a couple of age-related remarks that specifically mentioned age. One with regard to Mr. Ware, that he was too old. How old was Mr. Ware? Mr. Ware was, I believe, 71. And somebody said he was too old for the job? To continue working, and his health was not good enough to continue working. All right. Another one that specifically mentioned age was a county commissioner who stated, had it been up to him, he would have not used age to make the determination, but would have used seniority. The other remarks were to various plaintiffs and or spouses and relatives about the county looking to get rid of people who were fixing to retire, so to speak. So the rest of them involved comments about readiness to retire or fixing to retire. I'm sorry. Go ahead, Judge Goldberg. Shouldn't we talk a little bit about what was the purpose, the reason for the county dismissing all these people in the first place? I understand they had some budget concerns, which would make pretty good sense as a business operation. These comments, I guess, are interesting. They go to it. It seems to me they had some legitimate reasons for cutting these people off. Well, Your Honor, we disputed, the plaintiffs disputed, that the alleged reasons for the reduction in force were legitimate. And we presented facts that we contend would allow a jury to believe that the basis for the reduction in force was pretextual. The district court disagreed, but we have set forth those facts, and that's one of the reasons we are asking for reversal, because we think that it was appropriate for a jury to consider the evidence of whether the reasons were pretextual. But beyond that . . . I thought the reasons were just generally a list of people with versatility, people who could do more than one job, and people who had shown a little initiative or dedication by being on a list where they could be called in on weekends or nights. And based on that, your clients didn't measure up as well as some other people did. But, you know, as the law is, I mean, even if you disagree with their reasons, as long as it's a reason that they could have honestly held, then we don't really go back and say, well, gee, you made a bad mistake on that one. And Joe Blow was more versatile than somebody else. That is the law. Understood, Your Honor. And we have two different arguments here. We believe that we set forth sufficient facts from which a jury could find that they did not have a good faith belief that a reduction in force was necessary. That's part one of pretext. Yeah, but they had some reasons. The type of vehicle that these people drove, the volunteerism for, I guess, winter stuff or extra time. There were all kinds of reasons that went into the mix for the authorities to make the decision as to these people that were listed to be dropped. It's not, I mean, I think your analyst for the age thing was the lawyer, not another person. Is that correct? On the averages of ages before and after. Well, that would be evidence that we would intend to reduce to admissible. What a lawyer has to say is normally not evidence, is it? Well, no, Your Honor, but I believe it can be reduced to admissible format at trial by the testimony of a lay witness. We have the defendant's document showing the various ages. But as to Your Honor's question about the pretext argument, part two of that is that with regard. But it was a pretext for what? You see, you're saying they dummy up a reduction in force and then they dummy up a criteria for the sole purpose of firing a 47-year-old and a 52-year-old when, in fact, there were some older people that didn't get fired. And, in fact, as for the pretext on the reduction in force, they later hired some people back and one of them was your client, correct? Yes, one of them was hired back. So I'm having a hard time figuring out pretext from that evidence. Well, I think the pretext is that we have people who were dismissed and replaced by younger employees, that we have new hires occurring within months of the layoff. We had six substantially younger employees. What about, was it Mr. Ossobrook that gets rehired? I mean, isn't his case greatly undermined by the fact they hired him back? Well, we think that this goes to our evidence of pretext with regard to the selection process because Mr. Ossobrook testified that Charlie Collins hired him back. What Judge Carnes is talking about, I'm still, maybe I missed something here. What is the pretext? We believe that they were fired because of their age. I understand the definition of it, but I have to know what it is. That they go through all of this so that they can get rid of, again, a 47-year-old and a 52-year-old. I don't understand the argument. Do you dispute that Simmons told Charlie Collins that he had to get rid of some people? That he had to cut his budget? Well, Your Honor, I think that would be up for a jury to decide. Well, why? What's the dispute? Well, because it's plaintiff's contention, as testified to by Mr. Collins, that Mr. Simons was the decision-maker. And we have so many different explanations that contradict how it went down. But again, no matter who the decision-maker, it's hard to see the global sinister plot here. I mean, you've got to show everything was done to discriminate based on age, to get rid of older people. And that's what I'm having trouble with. And our contention is between the comments about wanting to get rid of older people. The older was over 71 and too sick. Your clients aren't over 71. Nobody thought they were sick. No, and of those four that summary judgment was denied, there were also clients who were in their 60s. And so then, you know, one argument is— Those people are all going to get their day in court. You've got clients that are getting their day in court, correct? It's been amicably resolved, Your Honor. Well, they got to a position where it could be amicably resolved. Yes, Your Honor. But in terms of the selection process, we do not believe the evidence shows that Charlie Collins was the decision-maker, nor that his comments about why the decision was made can be relied upon. Yeah, but Simons had the authority to hire and fire, right? Yes, Your Honor. And we can—Tim Simons was the decision-maker, not Charlie Collins. All right, thank you. Thank you. Thank you. Good morning. I'm Donald Cronin, and may it please the Court, I represent the sole defendant appellee in this case, which is Fannin County, Georgia. And there was some discussion about winter weather. Just for the Court's information, Fannin County is right where Tennessee and North Carolina meet. It's the county right under that border. So they do have winter weather. It's at the foot of the Blue Ridge Mountains. And getting people to work in winter weather is not an insignificant consideration when you are scaling down your workforce. Forgetting the weather, you had a budget problem. Isn't that the reason? Well, sure, we had a budget problem, but you still have to perform your mission as a road department with a reduced force. So you better keep guys who are versatile. And one of the things you want is you want guys who want to be out there. You don't want guys out there who don't want to be out there. That's very treacherous, dangerous work. At times, it has felt like appellants have been presenting a vicarious case. There is no requirement that they have to volunteer for extra time or volunteer for different vehicles. I mean, these people were basically doing what they were paid to do, were they not? Correct. And some guys showed more initiative and desire than others. Some guys willingly went out in bad weather. And obviously, in the reduction of force, you want to keep the guys who are versatile and who are flexible. And that's what the record shows. You know, at times, this case feels like appellants are presenting a vicarious age discrimination lawsuit because they talk about facts and evidence relevant to the older co-plaintiffs who were formerly in this case. And they utterly ignore facts that are material to their claims. For example, I think Judge Carnes mentioned this, Alsobrook totally ignores the fact that he was rehired into the very position from which he was laid off two months earlier. Kirkland ignores the fact that two of the truck drivers who were laid off with him were rehired, both of whom were significantly older than him, respectively, five and ten years. And both Alsobrook and Kirkland ignore the fact that truck drivers older than both of them were retained during the reduction in force. Specifically, four truck drivers older than Kirkland were retained during the reduction in force. Three truck drivers older than Alsobrook were retained during the reduction in force. But instead of addressing those facts, they present a litany of arguments that we contend are not suggestive of age discrimination and, more importantly, not suggestive of trial court error. I believe someone mentioned statistical evidence, and that's one of the errors that is enumerated. Trial court correctly excluded that evidence because you had selective sampling, you had no analytical foundation, and, more importantly, as referenced by, I think it was Judge Goldberg, you had attorneys, not witnesses, presenting that testimony. In terms of selective sampling, they create a statistic to show the age of the road department before and after the reduction in force. Only they kept out of the calculation the four oldest road department employees, one of whom was a 76-year-old part-time road employee who was not laid off during the reduction in force. Obviously, you can't pick and choose your facts when doing statistics. Another problem is the lack of analytical foundation. In a reduction in force case, what matters is the people in your universe, the people with your job descriptions, your job titles. It doesn't matter how someone in a different job category was treated. So when you have a monolithic statistic such as average age before and after, it doesn't reflect the reality of the prima facie case. You have to control for age within each discrete job category, which in this instance would be truck drivers. And lastly, we have a situation where they present a statistic showing the average age a year after the reduction in force, but they in no way control for employment actions that would not be indicative of an intention to rid the workforce of older employees. For example, they don't control for voluntary resignations, voluntary retirements, voluntary transfers, and unfortunately death. The 76-year-old I mentioned passed away in 2012. Obviously, the workforce is going to get younger because of his passing through no fault of the county. So these statistics were correctly excluded by the court for numerous reasons, lack of analytical foundation, selective sampling, and they come from an attorney, not a witness. Appellants are also applying the wrong prima facie case. The prima facie case as applied by the trial court, which isn't disputed, isn't contested as error, is the modified prima facie case that applies in reductions in force cases. Specifically, the fourth prong is modified as follows. Did the plaintiff present evidence that would allow a fact finder to reasonably conclude that the plaintiff was included in the reduction in force because of age? That is the standard that was used below correctly, and appellants do not challenge that, but they are applying a different prima facie case that appears during argument. They reference something about a younger person taking over their jobs. That's not the relevant criteria, and appellants did not enumerate the prima facie case down below as error. In terms of the statements, there was a reference to a commissioner who said he would have made the selections based on seniority, not age. We addressed this down below, and I think in this court, but that person was not part of the process, and there's no evidence he had any communications with the people who made the decision, specifically Charlie Collins is the individual who made up the list. So that evidence is absolutely devoid of any and all value. In terms of pretext, the argument that appellants made was that Simon is the chairman, is the decision maker. No, he's the final decision maker. There was also another decision maker by the name of Charlie Collins who was the department head, and appellants try to wish him away, wish him out of this case for the simple reason there's not a whiff of age discrimination concerning any of his actions or any of his statements. So they are trying to focus more attention on Mr. Simons than Charlie Collins, and the record reflects that the chairman rubber stamped Mr. Collins' list for the reduction in force, which understood the Proctor Hospital, means that those rationales of Mr. Collins become a proximate cause of the employment action. They don't disappear when they're rubber stamped by the final decision maker. They become part of the case. So all those arguments about Mr. Simons, the chairman, being the final decision maker, is just an attempt to distract from the decision maker below, the recommending decision maker, because there's absolutely no evidence in the record that anything he did was related to age. Absent any questions, that concludes my argument. Thank you. Thank you. Let me ask one quick. I keep harping on this. Yes, sir. There are two parts to this. There had to be a reason for the reduction in force. Sure. Was that reason the budget? Yes. Let me go through that. I have plenty of time. What happened was the finance director by the name of Rita Kirby concluded that the county was running out of money. What's her name again? Rita Kirby, K-I-R-B-Y. Thank you. She concluded the county was running low on money based on her benchmarks. And they had to do something. And further concluded they wouldn't have enough money to support the 2012 fiscal year budget. So she went to the chairman, Simons, and said, we've got a problem. You should take some cost saving measures. She didn't recommend a RIF. She just left it at that. The chairman decided a reduction in force would be appropriate. And he decided it would be appropriate in the road department. And you have the dominoes falling. It should be noted that there were some contemporaneous cost saving measures around the same time. There were three things in particular. Number one, the county refinanced the bond on the county courthouse. That was one of the options they considered. Well, they did it. They did. They did four things. They did that, which Yeah, but it didn't cover the shortfall. Well, they were being very proactive. I don't think they knew what the shortfall was going to be. The issue was with the property tax money coming in much slower than usual. The county doesn't collect the taxes. An independent constitutional officer or tax commissioner does. So if you're the county and you need this money and the money is not coming in and you have no means of collecting it, it's a very precarious situation for a county. So they did four things. They changed the RIF, the refinancing of the bond. They restructured the EMS department to reduce overtime, and they also changed emergency reporting protocol. Before the change, two vehicles would respond to every emergency. After the change, two would only respond in specific and limited circumstances. I think that was a fuel and overtime matter that the county was trying to address. But there's no doubt there was a legitimate financial reason, and there's no doubt that appellants don't contend that Ms. Kirby had any age animus or that she somehow was in cahoots with anyone in terms of the reduction in force or selecting the individuals for the reduction in force. So their argument that there's a pretext surrounding her actions, even if there were, you can't connect it up to the ultimate inclusion of these two appellants in the reduction in force because, obviously, without an allegation of her being in collaboration with somebody, you can't connect up her actions with the ultimate employment action in this case. Pending any further questions, that's all I have at this time. Thank you. Thank you, Your Honor. If I may, Your Honors, get back to the issue of pretext. The rubber stamp theory regarding Chairman Simons is only viable if you believe the defendant's version of the facts, and that's not where we are on summary judgment. If you believe the plaintiff's version of the facts, which is where we are, then the decision maker is Mr. Simons. Mr. Simons made age-related remarks. Mr. Simons started layoffs. Back to his remarks being what you said before about the 71-year-old. Yes, Your Honor, and in general, retirement, looking to get rid of people close to retirement. I don't see how that's irrelevant to your client. Again, neither of whom are close to being 71 years old, neither of whom are close to being near retirement age. Well, and the cases hold that retirement comments can be a proxy for age bias. But it almost sounds like they would be wanting to keep your clients because compared to other people, they're far away from retirement. I'm still having trouble seeing the connection. But for the fact you take these two clients and replace them with someone younger than them. And I think that a jury could conceivably weigh those comments differently as it applies to someone who's in their 60s than someone in their 40s. But at the same time, I think they're entitled to be considered by the jury because otherwise I don't know how you end up with a bright-line rule about comments about people nearing retirement are a proxy for age if you're above the age of X, but not if you're below the age of X. I mean, I think in the context of all the facts of the case. So if they rift, a lot of people are about 45 and kept on board, people are 55, 60. You'd say your client still has a claim because they're thinking about retirement and someday, many years in the future, your clients may retire. Is that your argument? No, because then they've been replaced by someone older. Well, they weren't replaced. They just didn't fire the older ones. Not all of them, but they could not have. And I don't believe the plaintiff's burden is to prove that every one older got fired. But you've got to have relevant evidence. What's your relevant evidence? That Mr. Kirkland and Mr. Alsobrook were let go. They're not near retirement and they're not in their 70s. They're not even in their 60s. And that their duties were then being performed by younger employees, that the county rehired younger employees thereafter. They rehired Alsobrook. And that's part of our evidence on pretext for a decision maker because Mr. Collins not only rehired Mr. Alsobrook, he told him he didn't think it was fair that he was fired to begin with. And that's why he was bringing him back. And our contention is that Mr. Simons made the decisions. Mr. Collis testified he went into this meeting where he was asked to tell Mr. Simons what all these different people could do and that he did every member of the road department. But now their theory is Mr. Collins, as opposed to Collis, was the decision maker and that Mr. Simons had nothing to do with it. Well, perhaps that's because they put Collins' explanation for the selection process, i.e. didn't work at night, up as a legitimate reason. Didn't have a flagging certificate and didn't volunteer for emergency work. But those were not things Mr. Collins actually testified to with regard to these clients. They are arguments made in the brief. And Mr. Simons testified that he did not take those things into account. There's also evidence in the record. They did leave. They did leave on force. They left him for some older people that were substantially older than your client, Mr. Kirkland. Well, for example, Mr. Inslee, who was a truck driver. At the time of the layoff decision, Mr. Collis testified he informed them that Mr. Inslee is going out anyway because he's got to have surgery and he never returned. And with regard to the 76-year-old that defendant complains we didn't include in our numbers in determining the average age, he was a part-time employee who was not part of the decision-making process. And the fact that we didn't include him inerts to their benefit because of his death thereafter, which would have positively affected our numbers. All right. Any other questions? All right. Thank you. That's your argument.  We'll be in recess. All rise.